UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KIM CROW HILMAN | CIVIL ACTION NO. 09-160 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CRAIG AMMONS, ET AL | MAGISTRATE JUDGE HORNSBY |

MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 34) filed by Defendant St. Paul Fire and Marine Insurance Company ("St. Paul"). Defendants seek dismissal of Plaintiff's complaint regarding 42 U.S.C. § 1983 against Larry Deen, as Sheriff of Bossier Parish on the grounds of failure to state a claim upon which relief may be granted. See id. Plaintiff opposes the motion to dismiss. See Record Document 43. For the reasons which follow, the Motion to Dismiss is **GRANTED**.

I.  **BACKGROUND.**

The Complaint alleges that Bossier Parish Sheriff's Deputy, Robert Clay Hilman ("Hilman") suffered from suicide threats, emotional instability, abuse of alcohol, and abuse of drugs and that his conditions were allegedly well known to the defendants. (Record Document 43 at 1).

According to the Complaint, on January 30, 2008, Deputy Bridges, one of the individually name defendants, was contacted by the Plaintiff and informed that Hilman was threatening suicide. Id. at 2. Deputy Bridges and Hilman spoke in a series of phone calls. Id. Plaintiff contends that Deputy Bridges never reported the incident to the Sheriff's Department. Id. Later that night, the Bossier Parish Emergency Services was contacted and informed that Hilman had barricaded himself in his home and insinuated that he (Hilman) was going to take his own life. Id. The Bossier Parish EMS contact the Bossier

Parish Sheriff's Department. Id. Ultimately, Lt. Ammons, Deputy Wood, and Deputy Mason (other individually named defendants) went to Hilman's home. Id. After speaking to Hilman on the phone and being refused admittance, the Deputies were able to coax him to come outside through the garage door. Id. Upon coming in contact with Hilman, defendants were allegedly able to observe that Hilman was intoxicated, had barricaded himself in his home, and that he had threatened suicide that night. Id.

The defendants, after speaking with Capt. Staton and Chief Myrick (other individually named defendants), decided to place Hilman under the supervision of his neighbor, Ken Halphen ("Halphen"). Id. Halphen was allegedly never informed by the defendants that Hilman was suicidal. Id. Halphen, after being asked by Hilman, left the home of Hilman around 4:00 a.m. on January 31st. Id. This left Hilman alone. Id. Hilman then went to Plaintiff's apartment complex. (Complaint at ¶ 60). Plaintiff told Hilman to go home. Id. at ¶ 61. Hilman then left the complex. Id. Sometime later a family member Hilman gained access to the house through the garage and discovered that Hilman had committed suicide with his Bossier Parish Sheriff's Office issued firearm. (Record Document 43 at 2-3).

The Plaintiff, Hilman's estranged spouse and tutrix of their two minor children, filed this instant action against several Bossier Parish Sheriff's Deputies, in their individual capacities, and the Bossier Parish Sheriff, Larry Deen, in his official capacity ("BPSO"), for injuries suffered by Plaintiff and her minor children as a result of the death of her husband.

**II. LAW AND ANALYSIS.**

    **A. Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the

plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, - U.S. -, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

      **B.**    **Federal Claims Asserted Pursuant to 42 U.S.C. § 1983.**

St. Paul moves for dismissal of Plaintiff's Section 1983 claims, arguing that "[b]eyond the conclusory statements found in paragraph 85, the complaint is completely devoid of any allegations against Larry Deen, Sheriff of Bossier Parish." See Record Document 34 at 2. In addition, St. Paul contends "[t]here are no factual allegations that a policy or custom was the moving force behind the violation of plaintiff's constitutional rights and there is certainly no factual allegations or references to any official policy, statement, ordinance, regulation or decision adopted, ratified or promulgated by the entity which led the alleged violation of plaintiff's constitutional rights." See id. at 3.

Plaintiff's opposition to St. Paul's Motion to Dismiss argues that the complaint alleges three grounds for municipal liability:

1. " . . . the BPSO developed a custom or practice of ignoring the psychological and mental issues of Deputy Hilman."
2. " . . . due to the significant level of rank held by those individuals involved in the incident on January 30, 2008, such actions constitute a single episode of conduct by an authorized policymaker sufficient to establish a custom or policy of the BPSO."
3. " . . . the BPSO and other defendants, following an established custom or policy of the BPSO, used the authority of their positions to create a dangerous environment for Deputy Hilman . . . ."

(Record Document 43 at 5).

In a Section 1983 lawsuit against a municipality, a plaintiff must show that his constitutional injury was the result of official policy, custom, or the act of an official policy maker. See Monell v. Dep't of Soc. Servs. of City of NY, 436 U.S. 658, 98 S.Ct. 2018 (1978). The Monell court concluded "that a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037-2038.

"Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir.2002). The most obvious way for a plaintiff to meet this requirement is to show that his constitutional injury was the result of "[a] policy statement, ordinance, regulation, or decision that [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers . . . delegated policy-making authority." Webster v. City of Houston, 352 F.3d 994, 1013 (5th Cir.2003). Second, a plaintiff may also establish municipal liability through "a persistent, widespread practice of city officials or employees, which, although not

authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.1984) (en banc). Finally, a plaintiff may establish municipal liability based on a single decision "rendered by an individual with 'final policy making authority,'" as determined under state law. Gelin v. Housing Authority of New Orleans, 456 F.3d 525, 527 (5th Cir.2006).

### 1. Widespread Practice

Here, Plaintiff's Complaint fails to evidence "a persistent, widespread practice of city officials or employees." Plaintiff's Complaint alleges two interactions between decedent and the Bossier Parish Sheriff's Office. Plaintiff's Complaint does not allege a similar practice against other employees of the Bossier Parish Sheriff's Office. These instances, even assuming all facts alleged are true, cannot lead to the imposition of municipal liability. Therefore, Plaintiff's allegation of a persistent, widespread practice must fail.

### 2. Single Episode of Conduct

The plaintiff further seeks to rely on the "single incident" exception identified in Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In Pembaur, the Supreme Court held that municipal liability under section 1983 may attach out of isolated decisions or actions taken by municipal policymakers. See id.; see also Bd. of County Comm'rs v. Brown, 520 U.S. 397, 406, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting Pembaur, 475 U.S. at 481, 106 S.Ct. 1292); see also Milam v. City of San Antonio,

113 F. App'x. 622, 626 (5th Cir.2004)  ("plaintiffs can hold municipalities liable for single instances of conduct perpetrated by the policymakers themselves; such one-time conduct can represent official 'policy' even though it does not necessarily form part of a plan or rule developed to govern all like occasions."); Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 385-86 (5th Cir.2005) (acknowledging a single incident exception).

In the wake of Pembaur, the Supreme Court had the opportunity to further define the contours of this exception in City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). There, a plurality opinion described a situation in which a municipality could be held liable based upon a single episode of conduct by a subordinate, non-policymaking employee if the conduct in question is ratified post-hoc by one who exercises final policymaking authority. See Praprotnik, 485 U.S. at 130, 108 S.Ct. 915. Relying on Pembaur's admonition that a municipality may only be held liable for acts which the municipality itself has sanctioned or ordered, the plurality opinion explained that:

> If a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker[,] ... the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower-ranking official.

Id. It also explained that:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 127, 108 S.Ct. 915. On various occasions since Praprotnik, and on at least one occasion pre-dating the case, the Fifth Circuit has either recognized or indicated that it would give favorable treatment to this so-called "ratification" theory. E.g., Beattie v. Madison County Sch. Dist., 254 F.3d 595, 603 (5th Cir.2001); Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 225 (5th Cir.1999); *613 Turner v. Upton County, 915 F.2d 133, 136 (5th Cir.1990); Chavez v. Brownsville Indep. Sch. Dist., 135 F. App'x. 664, 679 (5th Cir.2005); Milam v. City of San Antonio, 113 F. App'x. 622, 626 (5th Cir.2004); Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir.1985) (affirmed municipal liability based on isolated instance of officers' use of excessive force because the sheriff's actions following the incident essentially ratified the officers' conduct).

Turning to the instant action, a review of the Complaint demonstrates that there was no "ratification" of the officers actions on January 30-31, 2008 by Sheriff Deen. Instead, Plaintiff's brief suggests that because "several Deputies, a Lieutenant, a Captain, and a Chief were directly involved in decisions that lead to the death of Deputy Hilman" then "due to the significant level of rank held by those individuals involved in the incident on January 30, 2008, such actions constitute a single episode of conduct by authorized policymaker sufficient to establish a custom or policy of the BPSO." (Record Document 43 at 5). However, nowhere in the Complaint or briefs, does the Plaintiff establish that any of those individuals were authorized policymakers for the BPSO. Therefore, even assuming all allegations of fact are true, the Plaintiff cannot state a claim for relief under the single episode of conduct theory.

### 3. State Created Danger

Finally, plaintiff alleges a "state created danger theory" as the basis of liability for her § 1983 claims against the BPSO. Generally, "a state official has no constitutional duty to

protect an individual from private violence." McClendon v. City of Columbia, 305 F.3d 314, 324 (5th Cir.2002) (en banc) (per curiam) (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). However, the Supreme Court has held that where the state, "through the affirmative exercise of its powers, acts to restrain an individual's freedom ... 'through incarceration, institutionalization, or other similar restraint of personal liberty,' the state creates a 'special relationship' between the individual and the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence." Id. (quoting DeShaney, 489 U.S. at 200). Some circuit courts have read DeShaney to imply a second exception, the state created danger theory, to the general rule against state liability for private violence.[1] In this circuit, the availability of the state created danger theory as the basis of liability for a § 1983 claim is far less certain. In Leffall v. Dallas Independent School District, 28 F.3d 521, 530-32 (5th Cir.1994), this court discussed the state created danger theory and set forth the elements necessary to establish the claim as a basis for liability, but ultimately held that even if the state-created danger theory was constitutionally sound, the plaintiff failed to

---

[1] See, e.g., Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 434-35 (2d Cir.2009); Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1306-07 (11th Cir.2003); Ruiz v. McDonnell, 299 F.3d 1173, 1182-84 (10th Cir.2002); Kallstrom v. City of Columbus, 136 F.3d 1055, 1066-67 (6th Cir.1998); Kneipp v. Tedder, 95 F.3d 1199, 1201, 1208 (3d Cir.1996); Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir.1993); Freeman v. Ferguson, 911 F.2d 52, 54-55 (8th Cir.1990); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir.1989); Butera v. Dist. of Columbia, 235 F.3d 637, 651 (D.C.Cir.2001); but see Velez-Diaz v. Vega-Irizarry, 421 F.3d 71, 80 & n. 3 (1st Cir.2005) (noting that the First Circuit has discussed the state created danger theory but never found it actionable on the facts alleged) (quotations omitted); Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir.1995) (finding that the state created danger theory did not apply absent a custodial relationship).

meet the necessary elements. Subsequent § 1983 cases predicated on the state created danger theory similarly pretermit the issue.[2]

On two occasions this court explicitly adopted the state created danger theory but was ultimately reversed. See McClendon v. City of Columbia, 258 F .3d 432, 436 (5th Cir. 2001) (noting that the Fifth Circuit had "continued to recognize the existence of the theory" and thus applying the theory), rev'd en banc, 305 F.3d at 325 (holding that "neither this court nor the Supreme Court has yet determined whether a citizen has a constitutional right to be free from state-created dangers" and because the plaintiff failed to establish the necessary elements of the theory it would not apply even if available); Breen v. Tex. A & M Univ., 485 F.3d 325, 337 (5th Cir.2007) (holding that the state created danger theory was "a valid basis for a claim on the set of facts alleged"), rev'd, 494 F.3d 516 (5th Cir.2007)

---

[2] See, e.g., Bustos v. Martini Club, Inc., 599 F.3d 458, 466 (5th Cir.2010) ("[T]his circuit has not adopted the state-created danger theory."); Luevano v. Geyer, 355 F. App'x 834, 836 (5th Cir.2009) ("We have repeatedly declined to rule on whether the state-created danger theory applies in this Circuit, but have found that even if it did apply, it would not allow recovery for the plaintiff under the facts of the case at hand."); Hale v. Bexar Cnty., Tex., 342 F. App'x 921, 925-27 (5th Cir.2009) (declining to apply the state created danger theory because this court had never expressly done so and even if available the plaintiff had not met the elements of the claim); Lester v. City of College Station, 103 F. App'x. 814, 814-816 (5th Cir.2004) ("[T]his court has neither adopted nor accepted the state-created-danger theory of liability."); Greene v. Plano Indep. Sch. Dist., 103 F. App'x 542, 543-544, & n. 3 (5th Cir.2004) ("This Court ... has never held that the state created danger theory is one of the limited circumstances that would rise to the level of a due process constitutional violation contemplated in DeShaney."); Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 249 (5th Cir.2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause....We again decline to do so."); Piotrowski v. City of Houston, 237 F.3d 567, 584-85 (5th Cir.2001) (recognizing that the state created danger theory had not been explicitly adopted by this court and declining to do so in that matter because plaintiff had not met the elements of the theory); Randolph v. Cervantes, 130 F.3d 727, 731 (5th Cir.1997) (same); Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir.1997) (en banc) (same); see also Walton v. Alexander, 44 F.3d 1297, 1306 (5th Cir.1995) (holding that absent a special relationship between the state actor and the individual, the "state has no duty to protect nor liability from failing to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor.").

(granting rehearing sua sponte and issuing a subsequent opinion omitting discussion of state created danger theory); see also Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 249 n. 5 (5th Cir.2003) (recognizing that the panel's decision in McClendon "was vacated and with it our recognition of the [state created danger] theory"). Thus, this court's stance on the state created danger theory as a basis of liability for a § 1983 claim is uncertain.

As recently as October 4, 2010, this Circuit ruled on the viability of a state-created danger theory of liability. In Saenz v. City of McAllen, the Fifth Circuit again refused to allow an action based on that theory to move forward. 2010 WL 3852358, *4 (5th Cir. 2010). As such, this Court will follow the lead of the Fifth Circuit and not allow the Plaintiff's claim based on state created danger to proceed. Without clear guidance from the Fifth Circuit, this Court is unwilling to create a right of action out of whole cloth.

### III. CONCLUSION.

Based on the foregoing analysis, the Court finds that Plaintiff's complaint does not contain sufficient factual matter to state claims to relief that are plausible on their face.

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Record Document 34) filed by Defendant St. Paul Fire and Marine Insurance Company be and is hereby **GRANTED**. St. Paul Fire and Marine Insurance Company's Motion to Dismiss (Record Document 34) is **GRANTED** as to Plaintiff's Section 1983 municipal liability claims against Larry Deen, as Sheriff of Bossier Parish.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of October 2010.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE